# Attachment 1

1  NICHOLAS W. BROWN
   Attorney General
2  ALISON E. CORDOVA, SBN #284942
   Assistant Attorney General
3  Complex Litigation Division
   800 Fifth Avenue, Suite 2000
4  Seattle, WA 98104-3188
   206-464-7744
5  Alison.Cordova@atg.wa.gov
   Attorneys for State of Washington
6
   **Redacted Version of Document**
7  **Filed Pursuant to ECF No. 114**

8              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
9                   **WESTERN DIVISION**

10 JEREMIAH BALLEW and ELENI          NO. 2:23-cv-04324-GW-AGR
   HONDERICH, on behalf of themselves
11 and those similarly situated,       Assigned to Judge George H. Wu

12              Plaintiffs,            BRIEF OF AMICUS CURIAE
                                       ATTORNEY GENERAL OF
13    v.                               WASHINGTON STATE IN
                                       OPPOSITION TO CLASS
14 HUUUGE, INC., a Delaware            ACTION SETTLEMENT
   corporation,
15
                Defendant.
16

17

18

19

20

21

22

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# TABLE OF CONTENTS

I.  IDENTITY AND INTEREST OF AMICUS ................................................. 1

II. ARGUMENT ............................................................................................. 2

    A.  The Settlement is Not Fair or Reasonable Because it will Encourage Criminal Activity Prohibited Under Washington's Gambling Laws ...... 2

        1.  All online gambling is illegal in Washington State .......................... 3

        2.  Betting with virtual currency in casino apps is illegal gambling under Washington laws ..................................................................... 4

        3.  The Settlement's injunctive relief does not stop or prevent illegal gambling in Huuuge's casino apps .................................................... 7

        4.  Huuuge's prior Washington class action settlement is proof that a "continuous play" feature does not stop illegal gambling activities ............................................................................................... 8

        5.  Payment to class members of in-app coupons encourages Washington class members to illegally gamble in Huuuge's casino apps ..................................................................................................... 10

    B.  The Settlement is Not Fair, Adequate or Reasonable Because Washington Class Members Receive Next to Nothing for Waiving Strong Consumer Claims ......................................................................... 11

    C.  The Settlement is Not Fair, Adequate or Reasonable because Past and Future Claims Against Nonparty Platforms are Released Without Consideration ................................................................................ 16

III. CONCLUSION ......................................................................................... 20

BRIEF OF AMICUS CURIAE ATTORNEY GENERAL OF WASHINGTON STATE IN OPPOSITION TO CLASS ACTION SETTLEMENT NO. 2:23-cv-04324

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# TABLE OF AUTHORITIES

## Cases

*Benson v. Double Down Interactive, LLC,*
  No. 2:18-cv-00525-RBL, 2020 WL 4607566 (W.D. Wash. Aug. 11, 2020)...... 5

*Bullseye Distrib. LLC v. State Gambling Comm'n,*
  127 Wash. App. 231 (2005) ................................................................. 6

*Citizens for a Better Environment v. Gorsuch,*
  718 F.2d 1117 (D.C. Cir. 1983), *cert. denied* ...................................... 2

*EEOC v. Safeway Stores, Inc.,*
  611 F.2d 795 (10th Cir. 1979), *cert. denied sub nom.* ........................ 2

*Ferrando v. Zynga, Inc.,*
  No. 2:22-cv-00214, 2022 WL 2805481 (W.D. Wash. Feb. 24, 2022)............... 6

*Fife v. Sci. Games Corp.,*
  No. 2:18-cv-00565-RBL, 2018 WL 6620485 (W.D. Wash. Dec. 18, 2018)...... 6

*Fraley v. Batman,*
  638 F. App'x 594 (9th Cir. 2016)............................................. 2, 8, 11

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
  105 Wash. 2d 778, 719 P.2d 531 (1986)........................................ 11

*Horn v. Amazon.com, Inc.,*
  No. 2:23-cv-01727-RSL (W.D. Wash. Aug. 8, 2025) .................................... 18

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) .......................................................... 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ............................................................ 14

*In re: Apple Inc. App Store Simulated Casino-Style Games Litigation, et al.,*
  625 F. Supp. 3d 971 (N.D. Cal. 2022)............................................. 18

*Jeff D. v. Andrus,*
  899 F.2d 753 (9th Cir.1989) .......................................................... 17

*Kater v. Churchill Downs Inc.*,
  886 F.3d 784 (9th Cir. 2018) ........................................................................ 4, 5, 6

*King v. Riveland*,
  125 Wash. 2d 500, 886 P.2d 160 (1994) ......................................................... 17

*Larsen v. PTT, LLC*,
  737 F. Supp. 3d 1076 (W.D. Wash. 2024) ................................................ passim

*Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
  478 U.S. 501 (1986) ............................................................................................ 2

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*,
  834 F.2d 677 (7th Cir. 1987) ............................................................................ 18

*Rousso v. State of Washington*,
  170 Wash. 2d 70, 239 P.3d 1084 (2010) ............................................................ 3

*San Luis Obispo Local Agency Formation Comm'n v. City of Pismo Beach*,
  61 Cal. App. 5th 595, 275 Cal. Rptr. 3d 837 (Cal. Ct. App. 2021) ................... 17

*Schiff v. Liberty Mut. Fire Ins. Co.*,
  2 Wash. 3d 762, 542 P.3d 1002 (2024) ............................................................. 11

*Sierra Club, Inc. v. Elec. Controls Design, Inc.*,
  909 F.2d 1350 (9th Cir. 1990) ............................................................................ 2

*State ex rel. Evans v. Bhd. of Friends*,
  41 Wash. 2d 133, 247 P.2d 787 (1952) ............................................................... 4

*State ex rel. Schillberg v. Safeway Stores, Inc.*,
  75 Wash. 2d 339, 450 P.2d 949 (1969) ............................................................... 4

*State v. Reader's Dig. Ass'n, Inc.*,
  81 Wash. 2d 259, 501 P.2d 290 (1972) ............................................................... 4

*United Commercial Ins. Serv., Inc. v. Paymaster Corp.*,
  962 F.2d 853 (9th Cir.1992) ............................................................................. 17

*Wilson v. Huuuge, Inc.*,
  351 F. Supp. 3d 1308 (W.D. Wash. 2021) ....................................................... 8, 9

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Wilson v. Playtika, Ltd.*,
349 F. Supp. 3d 1028 (W.D. Wash. 2018) ............................................................ 6

### Statutes

S. Rep. No. 109-14 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3 ........................ 1

Wash. Rev. Code § 19.86.080 ................................................................................ 13

Wash. Rev. Code § 19.86.090 .......................................................................... 12, 13

Wash. Rev. Code § 19.86.140 ................................................................................ 13

Wash. Rev. Code § 9.46.010 .................................................................................... 3

Wash. Rev. Code § 9.46.0237 ............................................................................... 4, 7

Wash. Rev. Code § 9.46.0269 .................................................................................. 3

Wash. Rev. Code § 9.46.0285 .................................................................................. 4

Wash. Rev. Code § 9.46.220 .................................................................................... 3

Wash. Rev. Code § 9.46.221 .................................................................................... 3

Wash. Rev. Code § 9.46.222 .................................................................................... 3

Wash. Rev. Code § 9.46.225 .................................................................................... 3

Wash. Rev. Code § 9.46.240 .................................................................................... 3

Wash. Rev. Code Chapter 9.46 ................................................................................ 3

### Other Authorities

*A Close Look at Diamonds, Trade Tokens and Huuuge Points.*,
Huuuge Games Support Website (last accessed Aug. 11, 2025), https://huuuge.h
elpshift.com/hc/en/4-huuuge-casino/faq/3379-a-close-look-at-diamonds-trade-to
kens-and-huuuge-points/?s=social&l=zh-hant ................................................... 10

*Notice of Proposed Class Action Settlement*,
Huuuge Settlement Website (last accessed Aug. 11, 2025), https://angeion-publi

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

c.s3.amazonaws.com/www.huuugesettlement.com/docs/PDF%20-20Ballew%20 v%20Huuuge_Long%20Form%20Notice.pdf ................................................... 19

*What are the Diamonds For?*,
  Huuuge Games Support Website (last accessed Aug. 11, 2025), https://huuuge. helpshift.com/hc/en/4-huuuge-casino/faq/1421-what-are-the-diamonds-for/?s= social&l=zh-hant ............................................................................................... 10

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## I.    IDENTITY AND INTEREST OF AMICUS

The State of Washington, by and through its Attorney General, respectfully submits this brief opposing the proposed class action settlement (Settlement) between Plaintiffs and Defendant Huuuge, Inc. (Huuuge).

The Attorney General is the chief law enforcement officer of Washington State. Its interest here arises from two main responsibilities. First, in its role as chief law enforcement officer, the Attorney General has a responsibility to protect consumers. Second, the Attorney General has a responsibility to protect consumer class members under the Class Action Fairness Act (CAFA), which gives state Attorneys General a role in the class action settlement approval process. *See* S. Rep. No. 109-14, at 5 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 6 (requirement "that notice of class action settlements be sent to appropriate state and federal officials" exists "so that they may voice concerns if they believe that the class action settlement is not in the best interest of their citizens"); *id.* at 35 (2005) ("notifying appropriate state and federal officials . . . will provide a check against inequitable settlements"; "[n]otice will also deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties."). The Attorney General submits this brief to further these interests.

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## II.    ARGUMENT

**A.    The Settlement is Not Fair or Reasonable Because it will Encourage Criminal Activity Prohibited Under Washington's Gambling Laws**

"[A] district court should enter a proposed consent judgment if the court decides that it is fair, reasonable and equitable and does not violate the law or public policy." *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990) (citing to *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1125–26 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1219 (1984)); *see also Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016) ("a district court abuses its discretion in approving a settlement [ ] if the agreement sanctions '*clearly* illegal' conduct."). The parties may not agree "to take action that conflicts with or violates the statute upon which the complaint was based." *See, e.g., Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 526 (1986). Instead, "the consent decree . . . must further the objectives of the law upon which the complaint was based." *Id.* at 525 (citing to *EEOC v. Safeway Stores, Inc.*, 611 F.2d 795, 799 (10th Cir. 1979), *cert. denied sub nom. Courtwright v. EEOC*, 446 U.S. 952, (1980); *Citizens for a Better Environment*, 718 F.2d at 1125, 1128).

Here, the Plaintiffs alleged in their complaint that Huuuge's casino apps violate Washington's gambling laws, and in the prayer for relief asked this Court to declare "Defendant's conduct to be unlawful" and "[f]or an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein." ECF No. 1 at 71–72, ¶¶ 4, 5, 22, 23, 53, 54, 146. Despite this, the proposed

BRIEF OF AMICUS CURIAE ATTORNEY GENERAL OF WASHINGTON STATE IN OPPOSITION TO CLASS ACTION SETTLEMENT NO. 2:23-cv-04324

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Settlement sanctions, and in fact encourages, clearly illegal conduct under Washington's gambling laws.

### 1.    All online gambling is illegal in Washington State

Washington State strictly regulates and controls gambling in order to safeguard and promote the social welfare of its people. Wash. Rev. Code § 9.46.010; *see also Rousso v. State of Washington*, 170 Wash. 2d 70, 82, 239 P.3d 1084 (2010). Gambling in Washington is illegal unless the activity is specifically authorized by state law. Wash. Rev. Code § 9.46.010; *see also* Wash. Rev. Code §§ 9.46.0269, .220–22, .225. Gambling at slot machines is not authorized. *See* Wash. Rev. Code Chapter 9.46.

All online gambling activities are also illegal and effectively banned in Washington. Wash. Rev. Code § 9.46.240 ("[w]ith the advent of the internet and other technologies and means of communication that were not contemplated when . . . the gambling act was enacted in 1973 . . . it is appropriate for this legislature to reaffirm the policy prohibiting gambling that exploits such new technologies."); *see also Rousso*, 170 Wash. 2d at 75 ("[s]ince sending and receiving gambling information is illegal, Internet gambling in the state of Washington is effectively banned.").

"Gambling" is defined under Washington law as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or

BRIEF OF AMICUS CURIAE ATTORNEY GENERAL OF WASHINGTON STATE IN OPPOSITION TO CLASS ACTION SETTLEMENT NO. 2:23-cv-04324

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

understanding that the person or someone else will receive something of value in the event of a certain outcome." Wash. Rev. Code § 9.46.0237.

Importantly, a "thing of value" is defined very broadly, is not limited to money or property, and includes basically any and all consideration that would support a contract under the law. *See, e.g., State ex rel. Evans v. Bhd. of Friends*, 41 Wash. 2d 133, 150, 247 P.2d 787 (1952) ("all forms of gambling involve prize, chance, and consideration"); *State v. Reader's Dig. Ass'n, Inc.*, 81 Wash. 2d 259, 267, 501 P.2d 290 (1972) ("consideration sufficient to support a contract is enough."); *State ex rel. Schillberg v. Safeway Stores, Inc.*, 75 Wash. 2d 339, 345, 351, 450 P.2d 949 (1969) (consideration existed even though player "pays no fee, buys no tickets, and wagers no property, tangible or intangible" because player gave "time, thought, attention and energy"). Statutorily, "a thing of value" is defined as: "any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge." Wash. Rev. Code § 9.46.0285.

### 2. Betting with virtual currency in casino apps is illegal gambling under Washington laws

Digital casino apps offering electronic games of chance, including slot machines and other common casino games of chance, are no exception to Washington's gambling laws. According to *Kater v. Churchill Downs Inc.*, 886 F.3d

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1   784 (9th Cir. 2018), virtual coins in casino apps are a "thing of value" because

2   "[t]hey are a credit that allows a user to place another wager or re-spin a slot

3   machine. . . . In sum, these virtual chips extend the privilege of playing . . . ." *Id.* at

4   787. Therefore, *Kater* held that betting in casino apps with virtual coins constitutes

5   illegal gambling under Washington law. *Id.* at 785.

6         As *Kater* and later courts have discussed, *Kater* was not a novel decision—

7   the decision was a straightforward interpretation and application of Washington

8   statutes for which there was clear precedent. *See, e.g., Kater*, 886 F.3d at 788 ("Our

9   conclusion here turns on Washington statutory law, particularly its broad definition

10  of 'thing of value'"). "The Ninth Circuit's decision was a straightforward application

11  of [Wash. Rev. Code §] 9.46.0285's language . . . ." *Benson v. Double Down*

12  *Interactive, LLC*, No. 2:18-cv-00525-RBL, 2020 WL 4607566, at *2 (W.D. Wash.

13  Aug. 11, 2020). "Nor was the Ninth Circuit's interpretation of [Wash. Rev. Code §]

14  9.46.0285 truly 'new.' The Washington Court of Appeals applied the same reading

15  in *Bullseye Distrib. LLC v. State Gambling Comm'n*, 127 Wash. App. 231, 241

16  (2005), which addressed whether a simulated slot machine constituted a 'gambling

17  device' under [Wash. Rev. Code §] 9.46.0241." *Id.* "[A]s the Ninth Circuit observed,

18  *Bullseye* squarely held that a 'thing of value' need not be redeemable for money or

19  merchandise." *Id.* (citing to *Kater*, 886 F.3d at 787); *see also Larsen v. PTT, LLC*,

20  737 F. Supp. 3d 1076, 1085 (W.D. Wash. 2024) ("*Kater* agreed with a Washington

21  Court of Appeals decision [*Bullseye*] which had held that a machine emulating video

22  slot gameplay where 'players utilized play points that they obtained by purchase, by

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

redeeming a once-a-day promotional voucher, or by winning a game on the machine' was a gambling device, and that the 'game's play points were "things of value" because they extended the privilege of playing the game without charge, even though they lacked pecuniary value on their own.' ") (quoting *Kater*, 886 F.3d at 787) (citing to *Bullseye Distrib. LLC v. State Gambling Comm'n*, 127 Wash. App. 231, 234 (2005)).

All federal district courts located in Washington which have considered the application of Washington gambling laws to casino apps post-*Kater* are in accord with the *Kater* decision. *See, e.g.*, *Fife v. Sci. Games Corp.*, No. 2:18-cv-00565-RBL, 2018 WL 6620485, at *4 (W.D. Wash. Dec. 18, 2018) ("additional free coin allotments thus do not remove Scientific's [casino] app from the 'thing of value' definition"); *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1042 (W.D. Wash. 2018) ("even if the Court considers the fact that the vast majority of players do not purchase coins, this has no bearing on whether they are a 'thing of value' under the Ninth Circuit's reasoning"); Complaint ¶ 3, *Ferrando v. Zynga, Inc.*, 2022 WL 2805481 (No. 2:22-cv-00214) (W.D. Wash. Feb. 24, 2022), ECF No. 1 ("[u]nder *Kater*, Zynga violates Washington law by operating the Zynga slots."); *Larsen*, 737 F. Supp. 3d at 1085 ("Under Washington law as interpreted in *Bullseye* and *Kater*, High 5's virtual coins are 'things of value.' And, since the virtual coins are wagered to spin the virtual slot games in High 5 Casino and High 5 Vegas, the applications are illegal gambling games because the coins are things of value being staked on 'a contest of chance not under the wagerer's control' (*see* Dkt. 275-2

BRIEF OF AMICUS CURIAE ATTORNEY GENERAL OF WASHINGTON STATE IN OPPOSITION TO CLASS ACTION SETTLEMENT NO. 2:23-cv-04324

6

ATTORNEY GENERAL OF WASHINGTON Complex Litigation Division 800 Fifth Avenue, Suite 2000 Seattle, WA 98104-3188 206-464-7744

at 5–6), with the player's understanding that they may win more of the same virtual coins with a successful spin.").

### 3. The Settlement's injunctive relief does not stop or prevent illegal gambling in Huuuge's casino apps

The Settlement proposes that Huuuge implement a purported "free" or "continuous play" feature into its game mechanics as part of the injunctive relief to the class, but this change is not a loophole to Washington's gambling laws. Players will still purchase virtual coins to bet with, and that activity is clearly unlawful under Washington law. When players purchase virtual coins to place a bet at a slot machine or wager at a poker table, roulette game, or some other common casino game of chance within Huuuge's casino apps,[1] players are engaging in illegal gambling activities. The players are "staking or risking something of value" (i.e., purchased virtual currency) "upon the outcome of a contest of chance", on an understanding that they "will receive something of value" (i.e., extension of gameplay without charge) "in the event of a certain outcome." Wash. Rev. Code § 9.46.0237.

As a helpful analogy, when the Washington State Gambling Commission is regulating a land-based casino, it does not ask the casino whether some people are playing games for free and then give the casino immunity from all gambling laws and regulations if they answer yes. The Commission asks whether gambling is happening anywhere on the premises. And if it is, then it needs to be licensed, or the

---

[1] Huuuge's casino apps offer not only slot machine games, but also other common casino games of chance. For example, the app Huuuge Casino Slots not only offers over 200 slot machine games, but also offers the following: a lottery, Texas hold'em, roulette, baccarat, blackjack, and video poker.

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1   casino is operating unlawfully. The same is true with Huuuge's casino apps.

2   Regardless of who is playing for free in the purported "continuous play" mode,

3   others are not. And the ones who are not, are unequivocally gambling in clear

4   violation of Washington's gambling laws.[2]

5       **4.    Huuuge's prior Washington class action settlement is proof that a**
        **"continuous play" feature does not stop illegal gambling activities**

6

7       History has already shown that implementation of a purported "free" or

8   "continuous play" feature does not stop consumers from purchasing virtual currency

9   and making illegal bets in Huuuge's casino apps. In 2021, Huuuge reached a

10  settlement with Washington consumers on allegations that Huuuge's casino apps

11  violate Washington gambling and consumer protection laws. ECF No. 1 ¶ 23; Order

12  on Plaintiff's Motion for Final Approval of Class Action Settlement, *Wilson v.*

13  *Huuuge, Inc.*, 351 F. Supp. 3d 1308 (No. 3:18-cv-05276-RSL) (W.D. Wash.

14  Feb. 11, 2021), ECF No. 140.[3] In addition to paying $6.5 million to Washington

15  consumers as part of that settlement, Huuuge agreed to change the game mechanics

16  of their casino apps

17          to ensure that players who run out of sufficient virtual chips to continue
            to play the game they are playing will be able to continue to play games
18          within the Application they are playing without needing to purchase
            additional virtual chips or wait until they would have otherwise
19          received free additional virtual chips in the ordinary course.

---

20      [2] While it is the position of the State of Washington that all bets within Huuuge's casino
    apps are illegal gambling, Washington focuses here on those bets placed with purchased virtual
21  currency, as those bets are clearly illegal. *Fraley*, 638 F. App'x at 597 ("a district court abuses its
    discretion in approving a settlement [ ] if the agreement sanctions '*clearly* illegal' conduct.").

22      [3] The State of Washington was not a party to and did not participate in the case or
    settlement. Cordova Declaration ¶ 3.

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

> Specifically, players who run out of chips will be able to continue to play at least one game within the Application they are playing.

Declaration of Todd Logan, Ex 1 ¶ 2.2(c), *Wilson*, 351 F. Supp. 3d 1308 (No. 3:18-cv-05276-RSL), ECF No. 99-1.

This promise is nearly identical to what Huuuge is offering here. ECF No. 93-1 at 1 ("Players will be able to use the free chip option to continuously play at a lower level of the current game without buying more chips."). The one difference is that the "free play option will be available in all games offered in the Applications," instead of "at least one game." *Compare* ECF No. 93-1 at 1 to Declaration of Todd Logan, Ex 1 ¶ 2.2(c), *Wilson*, 351 F. Supp. 3d 1308 (No. 3:18-cv-05276-RSL), ECF No. 99-1.

Despite the 2021 settlement and Huuuge's prior promise and implementation of a purported "free" or "continuous play" feature, spending by Washingtonians in Huuuge's casino apps remained the same. Post-settlement, between January 1, 2022, and December 31, 2024, Huuuge earned ███████ in revenue from in-app purchases by Washington players, which averages to ██████ per month. Cordova Declaration at ¶ 4a. This is almost identical to what Huuuge earned from Washington consumers pre-settlement, showing that the "free" or "continuous play" feature had no real impact on consumer spending. Between January 1, 2019, and December 31, 2021, Huuuge earned ██████ from in-app purchases by Washington players, which averages to ██████ per month. *Id.* at ¶ 4b. Therefore, illegal gambling activities will continue in Huuuge's casino apps

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    regardless of the purported "continuous play" feature it promises to implement as

2    part of this proposed Settlement.

3    **5.**     **Payment to class members of in-app coupons encourages Washington class members to illegally gamble in Huuuge's casino**

4    **apps**

5    The Settlement's proposed payment of in-app coupons sanctions and

6    encourages the continued engagement in illegal gambling activities in Huuuge's

7    casino apps. The Settlement proposes to gift each class member 375 Virtual

8    Diamonds that are estimated at a value of $6 per customer for a projected total value

9    to the class of $7.5 million. ECF No. 98 at 7, quoting Settlement § 2.1.1. Virtual

10    Diamonds are used to "allow players to unlock slot games and bypass level

11    requirements . . . ."[4] While the Virtual Diamonds are not virtual coins and cannot be

12    wagered,[5] the Virtual Diamonds have no value outside of gameplay within Huuuge's

13    casino apps. They cannot be traded or sold on the open market, nor are they

14    transferable or redeemable. To be of any value to the consumer, the consumer must

15    continue playing Huuuge's casino apps, which allow and encourage the player to

16    participate in illegal gambling activities, including betting with purchased virtual

17    currency. Therefore, payment of in-app coupons promotes continued gameplay,

18    which in effect sanctions the illegal gambling activities within the casino apps. For

19    this reason, it would be an abuse of discretion to approve the proposed Settlement as

---

20    [4] *A Close Look at Diamonds, Trade Tokens and Huuuge Points.*, Huuuge Games Support

21    Website (last accessed Aug. 11, 2025), https://huuuge.helpshift.com/hc/en/4-huuuge-casino/faq/3379-a-close-look-at-diamonds-trade-tokens-and-huuuge-points/?s=social&l=zh-hant.

[5] *What are the Diamonds for?*, Huuuge Games Support Website (last accessed Aug. 11,

22    2025), https://huuuge.helpshift.com/hc/en/4-huuuge-casino/faq/1421-what-are-the-diamonds-for/?s=social&l=zh-hant.

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    it relates to Washington consumers. *Fraley*, 638 F. App'x at 597 ("a district court

2    abuses its discretion in approving a settlement [ ] if the agreement sanctions '*clearly*

3    *illegal*' conduct.")

4    **B.**    **The Settlement is Not Fair, Adequate or Reasonable Because Washington
         Class Members Receive Next to Nothing for Waiving Strong Consumer**

5         **Claims**

6         The Settlement is not fair, adequate, or reasonable because past and future

7    Consumer Protection Act (CPA) claims for Washington class members are strong

8    and worth significant monetary value compared to the only nominal and illusory

9    relief provided by waiving these claims. Under Washington's CPA, casino apps that

10   violate Washington's gambling laws violate public policy and are *de facto* unfair

11   "for the purposes of a non-per-se-CPA violation."[6] *See Larsen*, 737 F. Supp. 3d at

12   1088 (citing *Schiff v. Liberty Mut. Fire Ins. Co.*, 2 Wash. 3d 762, 772, 542 P.3d 1002

13   (2024)). This premise is well explained by the federal district court in *Larsen*:

14        Washington's legislative declaration regarding gambling states that the
          "public policy of the state of Washington on gambling is to . . . promote
15        the social welfare of the people by limiting the nature and scope of
          gambling activities and by strict regulation and control." [Wash. Rev.
16        Code § 9.46.010]. As a result, "All online or virtual gambling is illegal
          in Washington." *Kater*, 886 F.3d at 786. As [Plaintiff] persuasively
17        argues, because they amount to illegal virtual gambling, [Defendant]'s
          social casino games violate this public policy. *See supra* Section C; *see*
18        *also* [Wash Rev. Code §] 9.46.0237. The "social welfare of the people"
          was harmed when members of the Damages Class lost money
19

20

21        _____
          [6] The five elements of a CPA claim under Washington law are: (1) an unfair or deceptive
22   act or practice; (2) in trade or commerce; (3) public interest; (4) injury to business or property; and
     (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778,
     787–93, 719 P.2d 531 (1986).

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324                    11                    ATTORNEY GENERAL OF WASHINGTON
                                                           Complex Litigation Division
                                                           800 Fifth Avenue, Suite 2000
                                                           Seattle, WA 98104-3188
                                                           206-464-7744

purchasing nonreturnable and nonredeemable virtual coins that can only be unlawfully gambled away in [Defendant]'s applications.

And [Defendant] unfairly makes this money from Washington consumers by evading the "strict regulation and control" of the gambling statutes. *See* [Wash Rev. Code §] 9.46.010. This is a clear example of what the Washington Supreme Court meant when it held in *Schiff* that a statutory violation can "demonstrate that an action violates public policy and is unfair for the purposes of a non-per-se CPA violation." *Schiff*, 542 P.3d at 1007.

*Larsen*, 737 F. Supp. 3d at 1088–89.

On February 13, 2025, the Attorney General for Washington State sought clarity from counsel for Huuuge on the scope of the claims being released under the proposed Settlement, including whether this specific CPA claim (i.e. that it is unfair under the CPA to operate illegal gambling games) would be released. Cordova Declaration ¶ 5, Ex. A. Unfortunately, counsel for Huuuge did not provide a clear or direct response.[7] *Id.*

Notably, this CPA claim exposes Huuuge to enhanced damages under Washington law,[8] Wash. Rev. Code § 19.86.090 ("court may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual

---

[7] As a result, and for the purposes of this filing, the Attorney General of Washington State will assume that this CPA claim, along with any other CPA claim where the underlying unfair or deceptive act is tied to the apps being illegal gambling (such as misrepresentations regarding the legality of the activity in Washington), are all being waived by the proposed Settlement. However, if this is not the case, then Washington would ask that this Court make this clear on the record.

[8] This is especially significant here where claims that the games are illegal gambling under Washington law are not being waived. Therefore, Washington class members could bring claims in the future under Washington's Recovery of Money Lost at Gambling Act, Wash. Rev. Code § 4.24.070, which would entitle them to claim all losses from engaging in illegal gambling, but the class members' corollary claim under the CPA would be extinguished, barring them from seeking treble damages for the same wrongful conduct. This cannot be a fair or reasonable result.

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

damages sustained"), and it is likely enhanced damages would be awarded. In *Larsen v. PTT, LLC*, similar consumer class action claims under Washington's gambling and consumer protection laws recently proceeded to verdict against High 5 Games, LLC, for the operation of its casino apps. In that case, enhanced damages of over $7 million were awarded under the CPA. *See* Jury Verdict, *Larsen*, 737 F. Supp. 3d 1076 (No. 3:18-cv-05275-TMC), ECF No. 609 (verdict form reflecting actual damages of $17,750,326.14 and enhanced CPA damages of $7,190,040.01).

The proposed renumeration of Virtual Diamonds pales in comparison to what Washington consumers could receive. Despite the recent verdict and Washington consumers having lost over ███ million in illegal gambling activities within Huuuge's casino apps between June 2, 2019 to April 29, 2025[9] (which they are entitled to seek recovery of under Washington's CPA, *see* Wash. Rev. Code § 19.86.090)[10], the Settlement proposes that each Washington class member will receive 375 Virtual Diamonds worth only $6 in-app (and $0 outside of the apps) for waiving and releasing their CPA claims. Cordova Declaration at ¶ 4(c). Thus, with the Washington class estimated to be 96,853 consumers, this amounts to only $581,118 in total "value" to the Washington class. Cordova Declaration ¶ 6. This is a mere ███ of what Huuuge's exposure would otherwise be to Washington class members under the CPA, without even factoring in the possibility of enhanced

---

[9] Per the proposed Settlement, Washington class members are defined as those persons who made payment on or after June 2, 2019. ECF No. 44-1, ¶ 1.26(2).

[10] Similar to Washington consumers, the Attorney General of Washington State can seek restitution when it brings CPA claims. Wash. Rev. Code § 19.86.080. It can also seek injunctive relief and civil penalties. *Id.*; Wash. Rev. Code § 19.86.140.

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    damages. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,

2    55 F.3d 768, 806 (3d Cir. 1995) (noting that one of the "basic questions that courts

3    can ask to detect those cases settled in the absence of sustained effort by class

4    representatives sufficient to protect the interests of the absentees" is: "[i]s the relief

5    afforded by the settlement *significantly* less than what appears appropriate . . . ?").

6         The parties may argue that this approach disregards the "value" of the

7    Settlement's proposed injunctive relief, but this argument should fail because the

8    injunctive relief is illusory. This is true for two reasons. First, as discussed *supra*,

9    implementation of a purported "free" or "continuous play" feature will not stop or

10   significantly reduce purchases of virtual coins to illegally gamble in Huuuge's

11   casino apps—just as it did not do so the first time Huuuge implemented such a

12   feature in response to a consumer class action. Even if this Court assumes *arguendo*

13   that the parties have reasonably and accurately estimated the value to class members

14   of the implementation of the "continuous play" feature at $163.2 million,

15   ECF No. 98, citing Declaration of Christian Tregillis, ECF No. 47 ¶¶ 32–58, this

16   only increases the "value" to each individual class member by $129.07.[11]

17        Second, Huuuge's promise, as part of the injunctive relief, to "change *the*

18   *store* in the Applications to remove any countdown timer for offered sales" is wholly

19   deceptive and valueless. ECF No. 44-1 ¶ 2.3.6 (emphasis added). Huuuge can and

20   does put countdown timers related to sales *everywhere*, not just in the store.

21

22   [11] Per the CAFA notice received by the State of Washington, the estimated size of the nationwide class is 1,264,407. $163.2 million divided by 1,264,407 is $129.07. Cordova Declaration ¶ 6.

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1   For example, Huuuge has countdown timers related to sales (i) as a pop-up when a

2   user opens the casino app and (ii) on the gameplay screen when a player is actively

3   spinning and betting:[12]

4

5

6

7

8

9

10

11

12



13

14

15

16

17

18

19

20



21

22

---

[12] These screen captures were taken on April 17, 2025, from within the Huuuge Casino app.

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    Therefore, the coupons and injunctive relief in the proposed Settlement are

2    nominal and illusory at best. At worst, Washington class members receive nothing

3    for waiving strong claims of significant value—nothing except coupons that hold no

4    value outside of Huuuge's casino apps and that encourage Washington class

5    members to partake in illegal activities. This cannot be fair, adequate or reasonable.

6    **C.    The Settlement is Not Fair, Adequate or Reasonable because Past and**
       **Future Claims Against Nonparty Platforms are Released Without**
7       **Consideration**

8    This Settlement would unfairly, inadequately and unreasonably release past

9    and future claims against the platforms that host these apps[13] even though they are

10   not parties to this lawsuit, have given no consideration to receive this substantial

11   benefit, and presently face litigation involving claims that would be extinguished by

12   this Settlement. On February 13, 2025, when the Attorney General for Washington

13   State sought clarity from counsel for Huuuge on the scope of the claims being

14   released under the proposed Settlement, the State specifically inquired into whether

15   any claims against other entities would be released. Cordova Declaration at ¶ 5,

16   Ex. A. In response, counsel for Huuuge informed Washington that the Settlement

17   would release past and future claims against the platforms that host Huuuge's casino

18   apps, who are not a party to the case. Specifically, counsel for Huuuge stated the

19   following: "[w]e do believe that the releases would resolve any past claims against

20   the platforms based on allegations that the Games involved false advertising,

21   misrepresentations or omissions, or constitute illegal gambling under Illinois or

22

---

[13] Such as Google, Apple and Meta.

BRIEF OF AMICUS CURIAE ATTORNEY          16          ATTORNEY GENERAL OF WASHINGTON
GENERAL OF WASHINGTON STATE IN                       Complex Litigation Division
OPPOSITION TO CLASS ACTION                           800 Fifth Avenue, Suite 2000
SETTLEMENT                                           Seattle, WA 98104-3188
NO. 2:23-cv-04324                                    206-464-7744

1  California law. It could also bar certain future claims . . . ." *Id.* Notably, counsel for

2  Huuuge could not identify with specificity what future claims against the platforms

3  were being released. *Id.*

4      The Ninth Circuit treats settlement agreements as any other contract. *United*

5  *Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir.1992)

6  (" 'The construction and enforcement of settlement agreements are governed by

7  principles of local law which apply to interpretation of contracts generally.' ")

8  (quoting *Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir.1989)). Under Washington

9  and California law, contracts require consideration which is defined under both

10 State's laws essentially as some type of exchange and not a freely given benefit.

11 *King v. Riveland*, 125 Wash. 2d 500, 505, 886 P.2d 160 (1994) ("Consideration is

12 any act, forbearance, creation, modification or destruction of a legal relationship, or

13 return promise given in exchange."); *San Luis Obispo Local Agency Formation*

14 *Comm'n v. City of Pismo Beach*, 61 Cal. App. 5th 595, 600, 275 Cal. Rptr. 3d 837

15 (Cal. Ct. App. 2021) ("Consideration consists of either a benefit to the promisor or

16 a detriment to the promisee.").

17     Here, the platforms are non-parties, facing similar claims in other

18 jurisdictions, that have provided nothing in exchange for the benefit of having

19 substantial claims against them extinguished. There are two current nationwide class

20 actions filed against the platforms relating to casino apps and asserting consumer

21 protection claims, which would be extinguished under the proposed Settlement. One

22 suit is in the Northern District of California and consists of three consolidated multi-

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

district litigation cases against Apple, Google, and Facebook. *See In re: Apple Inc. App Store Simulated Casino-Style Games Litigation*, No. 5:21-md-02985-EJD; *In re: Google Play Store Simulated Casino-Style Games Litigation*, No. 5:21-md-03001-EJD; *In re: Facebook Simulated Casino-Style Games Litigation*, No. 5:21-cv-02777-EJD. The other suit is against Amazon, and is venued in the Western District of Washington. *See Horn v. Amazon.com, Inc*., No. 2:23-cv-01727-RSL. These suits bring claims alleging violations of Washington's CPA and Washington's Recovery of Money Lost at Gambling Act, Wash. Rev. Code § 4.24.070. Cordova Declaration at ¶ 7, Ex. B (*Amazon* Complaint at 18–22; *Apple* Complaint at 100–103; *Facebook* Complaint at 183–186; *Google* Complaint at 267–271;). All four complaints specifically name and identify Huuuge's casino apps. *Id.* (*Amazon* at 11; *Apple* at 42; *Facebook* at 127; *Google* at 209–10).

The fact that this Settlement would extinguish these claims against non-parties raises concerns about collusion. *See In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011) ("Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs"). This is particularly true where (a) no motion practice or formal discovery has occurred in the case, (b) the settlement is being sought prior to formal class certification, *see, e.g., id.* at 946–47; *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) (Posner, J.) ("when class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."), (c) Huuuge itself cannot articulate

BRIEF OF AMICUS CURIAE ATTORNEY
GENERAL OF WASHINGTON STATE IN
OPPOSITION TO CLASS ACTION
SETTLEMENT
NO. 2:23-cv-04324

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

what future claims against the Platforms the class members are waiving, and (d) the settlement website does not inform class members they are waiving *any* claims against the platforms. Regarding the last point, this is the notice language class members have been provided per the settlement website:

> Unless you opt out of the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit *against the Defendant* about any of the legal claims this Settlement resolves. The "Releases" section in the Settlement Agreement describes the legal claims that you give up ("Class Representative Released Claims and Released Claims") if you remain in the Settlement Class. The Settlement Agreement can be found at www.huuugesettlement.com.

> In brief, however, unless you opt out of the Settlement, *you will release Defendant and any past or present related individuals or entities*, and any other individual or entity, for any and all claims of any kind that : (i) in any manner relate to, arise out of, or concern the allegations in the Action; (ii) otherwise in any manner relate to, arise out of, or concern any alleged false advertising, misrepresentations or omissions in or about the Applications (including without limitation the use in or for the Applications of strikethrough pricing or any form of misleading comparison prices or sales advertising),; or (iii) otherwise in any manner relate to, arise out of, or concern any alleged claim that the Applications violate laws concerning illegal gambling, controlled games, slot machines or lotteries under California or Illinois law.[14]

Simply put, waiver of claims against the platforms without consideration violates basic fundamental principles of contract law in both Washington and California, and for the proposed Settlement to do so without notice to the class is especially unfair, inadequate and unreasonable.

---

[14] *Notice of Proposed Class Action Settlement* at 5–6, Huuuge Settlement Website (last accessed Aug. 11, 2025), https://angeion-public.s3.amazonaws.com/www.huuugesettlement.com/docs/PDF%20-%20Ballew%20v%20Huuuge_Long%20Form%20Notice.pdf (emphasis added).

BRIEF OF AMICUS CURIAE ATTORNEY GENERAL OF WASHINGTON STATE IN OPPOSITION TO CLASS ACTION SETTLEMENT NO. 2:23-cv-04324

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1

## III.    CONCLUSION

2        For the foregoing reasons, the Attorney General of the State of Washington

3   asks this Court to reject the proposed Settlement to the extent Washington consumers

4   are included as members of the class. In the alternative, Washington requests that

5   this Court reject the proposed Settlement to the extent it waives any claims of the

6   class against the platforms.

7        DATED this 14th day of August 2025.

8

9                                   NICHOLAS W. BROWN
                                    Attorney General

10                                  */s/ Alison E. Cordova*
                                    ALISON E. CORDOVA, SBN #284942
11                                  Assistant Attorney General
                                    Complex Litigation Division
12                                  800 Fifth Avenue, Suite 2000
                                    Seattle, WA 98104-3188
13                                  206-464-7744
                                    Alison.Cordova@atg.wa.gov
14                                  Attorneys for State of Washington

15

16

17

18

19

20

21

22

BRIEF OF AMICUS CURIAE ATTORNEY           20          ATTORNEY GENERAL OF WASHINGTON
GENERAL OF WASHINGTON STATE IN                            Complex Litigation Division
OPPOSITION TO CLASS ACTION                               800 Fifth Avenue, Suite 2000
SETTLEMENT                                                  Seattle, WA 98104-3188
NO. 2:23-cv-04324                                              206-464-7744